## JOHN MILLER v. J. G. HAMMER.

.APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
NO. 4 OF PHILADELPHIA COUNTY.

Argued April 2, 1891—Affirmed at Bar. °

In trespass for malicious prosecution, the evidence adduced having been submitted to the jury, with proper instructions as to malice and want of probable cause for the prosecution complained of, the judgment on the verdict in favor of the defendant was affirmed.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 133 January Term 1891, Sup. Ct.; court below, No. 581 June Term 1887, C. P. No. 4.

On June 14, 1887, John Miller brought trespass against John G. Hammer, to recover damages for an alleged malicious prosecution of the plaintiff by the defendant. The defendant pleaded, not guilty.

At the trial on October 7, 1890, the testimony submitted on the part of the plaintiff showed, in substance, that he and one Nachtman had been employed in the defendant's bakery, at 924 Callowhill street; that on January 15, 1886, in consequence of some disagreement, they quit the defendant's service, and about 6.30 P. M. went to their room in the building to get their clothes; that, working in the nighttime and sleeping in the daytime, they kept no light in their room, and to find their clothes one of them pulled a theatre bill from the wall and lit it by a match for a light; that there were other bills left on the wall; that when they had gotten their clothes together, they went out and slept at a boarding house just across the street kept by a Mrs. Frappel, where they remained until the next evening when they were both arrested on a charge of arson preferred by the defendant; that in default of $1,000 bail they were committed to prison, and on their trial in the Court of Quarter Sessions, before LUDLOW, P. J., they were both acquitted.

The defendant testified that on the evening of January 15th,

the plaintiff and Nachtman left his employ without giving no-
tice; that there was always a candle on the mantel-piece of
the room they occupied; that the next morning his wife told
him to look at their room; that he did so and, two or three
feet from the bed, was a pile of paper six inches high and two
feet in diameter, half burned; that on the pile was a window
shade, also partly burned, and that he then had the plaintiff
and Nachtman arrested. Mrs. Hammer and a servant girl tes-
tified in corroboration of defendant. Mrs. Frappel testified
that the plaintiff had threatened to burn the defendant out,
and that when they came back with their clothes that evening,
they said, "We've done it;" that Mr. Frappel asked what
they had done, they said, "You will see after a while."

At the close of the testimony, the court, WILLSON, J.,
charged the jury in part as follows:

The first witness who says that she saw anything of what ex-
isted in that room, was the servant girl. In weighing all testi-
mony, it is desirable to have confidence in the disinterestedness
as well as the general truthfulness of a witness. This witness
does not now live with the defendant. She lived with him at
this time, but is now married and residing elsewhere. She said
that these young men went out and took all their clothes, ex-
cepting their working clothes; that when she went up stairs
to bed,—not immediately afterwards,—she smelled smoke and
went into the room and she found, still smouldering there, a
pile of papers. If I remember her testimony, she did say,—or
somebody said,—that all these theatre notices which had been
upon the wall had been removed, and she said that the fire was
about two feet in diameter and five or six or perhaps more
inches high. As I said, you ought not to take this measure-
ment as exact. You cannot; your common sense will tell you
so. It is an approximate estimate which a person puts, after a
lapse of time, upon an object which he has seen. She says she
saw that pile of papers there smouldering, and not only that,
but she says she went to her room and got water and threw it
upon the pile, for the purpose of putting out this smouldering
fire; and she also says that the shade, or whatever it was, prob-
ably not the choicest shade which could be bought in the city,
was upon the heap, partly consumed. She did not go down

### Charge of Court below.

that night to Mrs. Hammer, because she had gone to bed ; but the next morning she told Mrs. Hammer about it, and Mrs. Hammer saw substantially the same thing and subsequently informed Mr. Hammer, and he went up and saw the same state of facts, and later in the day a police officer was sent there,— not by Mr. Hammer, as I understand the testimony, nor at his request, but by the magistrate, who wanted very properly to see what had been done in the matter, and the officer saw about the same thing.  His attention has been directed to many other things since and his memory is not now so good. These men, according to the defendant, were not seen by him ; they had disappeared and he did not know where they were, and he went out and saw the magistrate, obtained the warrant and had them arrested.

Is that a fictitious story or is it substantially true ?  In weighing the question as to whether it is true or not, you are entitled, of course, to look into the motives which would induce a person to invent a story of that kind.  What reason had the defendant for doing what the plaintiff now charges him with doing ; going into the chamber in the fourth story and piling that paper in a heap and setting fire to it?  What motive had he ?  That is a most improbable explanation, in my judgment.  However, I must leave that to you.  If you think it is a likely explanation, of course you can give such weight to your conclusion as you think proper.  I have already stated to you that if this account, which the defendant and his witnesses give, is substantially the truth of the case, your verdict ought to be for the defendant without any hesitation, beyond all question.

[This theory of the case which the defendant has given is fortified, if you believe the testimony of Mrs. Frappel.] [1]  Perhaps it would have been more natural,—and I would be inclined to say that it would have been more natural,—for her to have gone over and told Mr. Hammer what these young men had said ; but the explanation of why she did not may be the correct one, that she thought these young fellows were talking largely, and that their heads were somewhat swelled, and they really did not mean anything of the sort.  Possibly that might be the reason.  The weight of the reason I leave to you. . . . .

—The plaintiff requests the court to charge the jury :

1. That the malice of the defendant may be inferred from

Charge of Court below.

want of probable cause, and that any unlawful act done wilfully and purposely, to the injury of another, is malicious.

Answer: That is a true statement of the law; and it leads me to say something which I have omitted to say in my general remarks. Where a person charged with crime is not guilty of it, as this plaintiff was, it throws upon the person who is charged with malicious prosecution the burden of showing that there was probable cause. Probable cause, as I have already stated, is the reasonable ground which a careful, prudent man must have for his acts in causing an arrest. If there is no probable cause, then the man is guilty of what he is charged with. He has done a malicious act, under the law. If there was no probable cause in this case, the plaintiff would be entitled to a verdict.[2]

2. That malice may be inferred from the conduct and actions of the defendant; and that it is not incumbent on the plaintiff, in order to recover, to establish direct proof of the defendant's malice.

Answer: Of course, malice may be inferred from the conduct or acts of the defendant. I do not know what is meant by direct proof. There must be proof of malice, and that proof may be in the absence of probable cause, and if probable cause is absent, the inference of malice naturally and legally arises.[3]

4. That the defendant's malice against the other party (Nachtman), against whom the prosecution was brought jointly with this plaintiff, may be considered by the jury as tending to show defendant's bad motives against both.

Answer: I do not agree with that point as stated in the abstract. You are entitled to take all the circumstances of the arrest together; must take them together. If the defendant had malice against Nachtman, and not against this man, the fact that he had malice against Nachtman had nothing to do with showing that he had malice against the plaintiff. The whole thing must be taken together, in order to show the true nature of the case.[4]

5. That the defendant, to sustain the defence of probable cause for a criminal prosecution, must show such conduct on the part of the accused as may induce the court to infer that the prosecution was commenced and carried on by defendant from purely public motives, and that he was actuated by an

honest and reasonable conviction of the justice of his prosecution against the plaintiff.

Answer: I am not aware that the law requires that the motive must be a purely public one. A man must undoubtedly institute a prosecution under the honest and reasonable conviction of the justice of his course, before he can do it properly.[5]

8. That the acquittal of the plaintiff by the jury, of the criminal charge, after the defendant had testified before them, is prima facie evidence of the want of probable cause, and shifts the burden of proof upon the defendant to show the contrary; and unless he satisfies the jury that the reasons for his act were such as would have been sufficient to warrant a prudent, intelligent and cautious man in drawing the same conclusion of the plaintiff's guilt, their verdict must be for the plaintiff.

Answer: That is also sound. It is simply a repetition of what I have already stated to you.

9. That if the jury find for the plaintiff, in their assessment of damages they are to consider and indemnify the plaintiff, first, for the actual loss of his liberty for seventeen days and the peril to his liberty for years; second, for the injury to his reputation; third, for the physical as well as the mental sufferings to which he was subjected; fourth, for the loss of his time, and for all costs and expenses to which he has been necessarily subjected in procuring his acquittal.

Answer: I affirm that, except in so far as the peril to his liberty for years is concerned; I do not consider it a proper element, as his liberty was within a reasonable time obtained.[6]

—-The jury returned a verdict in favor of the defendant. Judgment having been entered, the plaintiff took this appeal, assigning for error:

1. The portion of the charge embraced in [  ][1]
2-6. The answers to the plaintiff's points.[2 to 6]


*Mr. Thos. H. Neilson* (with him *Mr. Wm. C. Mayne*), for the appellant.

Counsel cited: Stier v. Labar, 16 W. N. 273; Brobst v. Ruff, 100 Pa. 94; 2 Greenl. Ev., 7th ed., §§ 454, 455; Seibert v. Price, 5 W. & S. 438.


*Mr. William C. Hannis*, for the appellee, was not heard.

Statement of Facts.

PER CURIAM:

—On the argument at Bar,

Judgment affirmed.

————◦▸————

## ESTATE OF JAMES M. VANCE, DECEASED.

APPEALS BY THE CONTRIBUTORS TO THE PENNSYLVANIA HOS-
PITAL, JAMES V. QUINTON, AND THE PRESBYTERIAN HOSPI-
TAL, FROM THE ORPHANS' COURT OF PHILADELPHIA COUNTY.

Argued January 15, 1891—Decided April 6, 1891.
[To be reported.]

1. When a testator by his will bequeaths the income of his estate to his
   widow for life, with particular and residuary bequests payable at her
   death, on distribution an election by the widow to take against the
   will must be treated, in all its results, as the equivalent of her death:
   Ferguson's Est., 138 Pa. 208.
2. The effect of such election will be to accelerate payment of all the lega-
   cies, in the testator's order of priority. The particular legacies cannot
   be postponed until the widow's death, that the income thereof may be
   transferred to the residuary legatees during her life, to compensate for
   diminution in the amounts coming to them.
3. The equitable doctrine stated in Sandoe's App., 65 Pa. 314, that the
   benefit intended for the widow will be sequestered to secure a provision
   for those who are disappointed by her election, does not justify an inter-
   ference with the right of priority given by the will to other benefici-
   aries, merely on account of diminution of the residuary estate.
4. A court of equity will interpose if necessary to preserve the intention
   of the testator from destruction; but such interposition should never
   take place in favor of a residuary as against a definite legatee, unless
   upon a plain implication in the will that the residuary legatee is in fact
   a preferred object of the testator's bounty.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WIL-
LIAMS, McCOLLUM and MITCHELL, JJ.

No. 114 July Term 1889, Nos. 202, 232 January Term 1891,
Sup. Ct.; court below, numbers and terms not shown.

James M. Vance died July 22, 1887, leaving a widow, S.