## Mark Baldwin v. Chris Von der Ahe, Appellant.

*Jury trials—Two verdicts—Practice, S. C.*

Where two successive juries agree upon substantially the same verdict which is acquiesced in by the trial court, the judgment entered on the second verdict will not be reversed on appeal.

*Malicious prosecution—Probable cause—Malice—Province of court and jury.*

In an action for malicious prosecution it appeared that the plaintiff had twice been arrested and discharged for an alleged conspiracy to entice a baseball player from defendant's employment. Plaintiff testified that he was not guilty of the offense; that he was in no combination to sign the player, and at the time of the alleged offense he did not want the player. Defendant introduced testimony which tended to show that at the time of the alleged offense, defendant was the owner of a baseball league; that plaintiff was a member of another; that there was a rivalry between the two leagues, and that defendant had been informed by several parties that it was the purpose of plaintiff to induce a player under contract with the defendant to leave his employment. *Held*, (1) that the case was for the jury to determine whether there was probable cause or not; (2) that if the jury found from the evidence that the conduct of the defendant was reckless and intentional oppression, undertaken without probable cause, for the purpose of distressing the plaintiff, they were justifiable in awarding punitive damages.

Argued Oct. 29, 1897.  Appeal, No. 116, Oct. T., 1897, by defendant, from judgment of C. P. No. 3, Allegheny Co., May Term, 1894, No. 771, on verdict for plaintiff.  Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.  Affirmed.

Trespass for malicious prosecution.  Before PORTER, J.

The facts appear by the following portion of the charge of the trial court:

In the spring of 1891 this plaintiff was arrested in the city of St. Louis upon a charge made by the defendant, in which the offense alleged was that he had been guilty, with Mr. O'Neill, Mr. Hanlon, and others to the prosecutor unknown, of a conspiracy to injure the defendant in his business by taking away from him his baseball players.  The plaintiff, having been arrested on that charge, was for a short time confined in jail, and then released upon bail.· His hearing was adjourned from time to time, and the evidence would seem to be that on April 4, or, at any rate, some date early in April, that charge was abandoned by the prosecuting attorney, a nol. pros. was entered, and that was the end of that charge.

Immediately upon the disposition of that first charge, the defendant in this proceeding caused the plaintiff to be arrested again upon substantially the same charge, the difference being that in the first information the overt act alleged to have been committed in the state of Missouri was that this plaintiff had attempted to bribe one King, who was an employee of the defendant in this action, to leave the employment of Mr. Von der Ahe, the defendant; that he had attempted to persuade him and offered him a bribe.  The second information or form of the charge sworn to by the defendant in this action, and made upon April 4, or about that date, charged substantially the same conspiracy, but the overt act alleged to have been committed in the state of Missouri was that he had actually accomplished his purpose by bribing or persuading King to leave the employ of Von der Ahe.  The criminal offense charged was the conspiracy; that is, the unlawful combination of two or more people to do an unlawful act, or to do a lawful act in an unlawful manner.  It is the combination which makes the act criminal, for two or three men to enter into an agreement among them-

selves to take another man's employees away from him for the purpose of injuring his business, or doing any other act that would necessarily interfere with his management of his business is a conspiracy. But if the conspiracy is entered upon, the agreement made in Pennsylvania, in order to give the courts of Missouri jurisdiction there would have to be some overt act committed in that jurisdiction. Some person would, at least, have to go there and enter upon the carrying out of the purpose of the unlawful combination. And for that reason it was necessary that some overt act should be charged, as it was testified by one of the witnesses in this proceeding.

There are certain facts about which there is no dispute under the evidence. These people were all in the baseball business. Baldwin was connected with the Pittsburg Club, Mr. O'Neill was the president of that club, and Mr. Hanlon was the manager. Von der Ahe, from the evidence, seems to have been the owner of the St. Louis Club. A man named King was alleged by Von der Ahe to be under contract to play with that club during the then approaching season of 1891—was alleged by Von der Ahe to be under contract with him. There was a man named O'Connor who was not under contract with Von der Ahe at all, but was alleged by the Columbus Club to be under contract to them for that year. Baldwin had signed O'Connor for the Pittsburg Club, which the evidence would indicate necessarily involved the loss of his services to the Columbus Club. But it was not the signing of O'Connor that was charged here, it was the conspiracy to deprive Von der Ahe of his players and employees, and King was the one named. The second information was dismissed, and that ended the prosecution, and the plaintiff brings this action for the purpose of recovering damages for a malicious prosecution. In order to entitle him to recover he must establish, by the weight of the evidence, two facts—that this prosecution was without probable cause, and that it was malicious. In order to do that, the plaintiff has been called in his own behalf, and he testifies that down until after the time of his arrest he had not met King in St. Louis; that he was not guilty of the offense, that he was in no combination to sign him, and he testifies that they did not want King at that time; that they had all the pitchers they needed. He says that the first time he saw King was when they came to take

depositions in his criminal case after his arrest, at his lawyer's office, and that he did not at that time, or at any other time, make King any offer, or have any negotiations with him with regard to his coming to the Pittsburg Club. If you believe that, that would establish a prima facie case upon that branch of his case. In other words, upon the mere question of probable cause, or want of probable cause, it would put the defendant to the necessity of putting in his case. But the plaintiff must establish more than want of probable cause; he must establish malice; that is, not necessarily that there was any grudge entertained against him, but that the motive was malicious. It would be sufficient to show that it was done with a recklessness of consequences and of the rights of others; in other words, that it was a wrongful act intentionally done, which would necessarily be injurious to the man against whom the charge was made, if it were without probable cause. In other words, malice may be inferred from the want of probable cause and the circumstances of the case. The plaintiff having put in his case as to what his relations with King had been, and then, having proved his arrest and all the circumstances connected with his detention, and the subsequent proceedings upon these cases, rested. Relying upon the inference of malice deducible from the want of probable cause, where the want of probable cause is established by evidence, the burden is upon the plaintiff to satisfy you of the existence of both the elements. The plaintiff having rested, the defendant then puts in his side of the case. Where the plaintiff has established a prima facie case by his evidence —in other words, a case which the defendant is called upon to answer—the defendant may offer evidence showing that there was probable cause for the prosecution; that is, that there was a reasonable ground for suspicion, supported by circumstances sufficient to warrant a man of reasonable prudence in believing the person guilty of the offense. It is sometimes described as a deceptive appearance of guilt. In other words, he may show that the circumstances under which he acted were such as to warrant a man of reasonable prudence in believing the person guilty of the offense, although he may have been entirely innocent. If he does that, he has shown probable cause. Or, in case he fails to show probable cause, he may show that, although there was no probable cause, he was not actuated by malice;

that his prosecution was in good faith.   He may rebut or over-
come the mere inference of malice arising from want of probable
cause by showing that he acted in good faith, as that he made
a fair and full statement of the facts within his own knowledge,
and such facts as he had reasonable ground to believe he would
be able to prove, and submitted them to counsel, and that coun-
sel thereupon advised the prosecution, and that he followed that
advice in good faith.

   Now, gentlemen, you apply those principles to this case.   You
will consider all the evidence in the case in passing upon those
questions.   There is no doubt about the arrest of the plaintiff,
and there is no controversy as to what occurred subsequent to
his arrest.   There is no doubt about his discharge.   You are
not passing upon the question as to whether or not this plain-
tiff was guilty of the offense wherewith he was charged there;
you are passing upon the question as to whether or not the
prosecution was malicious, and without probable cause.

   The defendant has testified, and his testimony has been read
to you, and the depositions of certain witnesses have been sub-
mitted for your consideration, in order to enable you to make
up your mind as to the questions of fact.   The probable cause
that is alleged for this prosecution by the defendant in his tes-
timony is that he was informed by Pritchard, and I believe by
Spink, that Baldwin had said that he was going to get King;
that Munson and another witness said that O'Connor had told
them that Baldwin was going to get King; that at that time
there was a contest going on between the associations; that
shortly before this information was made he had been shown a
telegram from the Columbus Club by his secretary, Munson,
with regard to the attempt of the Pittsburg Club to get associa-
tion players; that he had seen a telegram from O'Neill to Com-
iskey, asking Comiskey to come to Pittsburg and bring this man
King with him, and that he had seen the notice in the newspa-
pers of the signing of O'Connor.   Now, gentlemen, if Pritchard
and Spink were men whom this defendant had reason to con-
sider worthy of belief, and they told him that Baldwin had said
to them that he was going to get King, taken in connection
with the telegram from O'Neill that Von der Ahe had seen, and
the fact that O'Connor had been signed, then those facts would
constitute probable cause for the prosecution.   But whether or

not he had been so told by Pritchard, whether you believe his witnesses, is a question of fact for you. If you find the facts to be so, then they constituted a probable cause for the prosecution, and your verdict would be in favor of the defendant. In case you find that there was no probable cause, in other words, in case you fail to find the facts to be as stated, and for that reason find against the defendant upon that point, then you will remember that the burden is upon this plaintiff to satisfy you of the existence of malice. He does not have to show you that the defendant hated him personally, but he has to show you that this prosecution was malicious; that is, that it was a wrongful act intentionally done, and necessarily injurious to him. But if you find want of probable cause in his favor, then you would be justified in inferring malice from the existence of the element of want of probable cause. In other words, from want of probable cause malice may be inferred, but this in ference would be overcome if the defendant went to a competent attorney with his witnesses, and there fairly stated what evidence he had, not keeping anything back, not alleging anything that he did not know or did not have reasonable ground to believe that he could prove by somebody else, making a full, fair and candid statement. And if, having made such a full, fair and candid statement, his counsel advised him to prosecute, then that would be rebutting the presumption of malice. And if you find that he did fairly submit his statements and his evidence to his counsel, and the counsel advised prosecution, then your verdict would be in favor of the defendant.

Defendant's points and the answers thereto among others were as follows:

2. Should the jury find from the evidence that there was no probable cause, and that the defendant was impelled and actuated in his arrest and prosecution of plaintiff by actual malice and hatred, and was intentionally seeking thereby to harm and injure the plaintiff in his person, reputation and business, they may by their verdict not only allow actual damages for said injury, but may also give vindictive damages in such amount as may be deemed an adequate punishment for the defendant's act. *Answer:* Affirmed. [1]

4. That in this case the jury ought to consider the facts, if they find the facts to be that a rivalry at and about the time of the prosecution existed between the two baseball associations,

known as the National League and American Association, the fact that Baldwin was a member of the League Association, and was in St. Louis in the interest of the Pittsburg Club, a member of that association, to get O'Connor, a member of the other association, to break his contract; the general newspaper reports that Baldwin was in St. Louis after American Association players, and the evidence that the defendant was informed by Munson, Pritchard, Fay, Spink and others that O'Connor had stated that it was the purpose of Baldwin to get King also to leave the St. Louis Club and come into the National League Association, as evidence tending strongly to negative any inference of malice which. they might otherwise find, if they found that there was no probable cause for the prosecution. *Answer:* This point is' refused. The jury ought to consider the facts stated in passing upon the question of the existence of malice; but it is not for the court to' say that they strongly tend to negative any inference of malice which the jury might otherwise find. The strength or weakness of the facts recited in the point as evidence upon the question of malice is for the jury, to be considered in connection with all the evidence in the case. [2]

8. That in no event ought the jury to allow the plaintiff any other than compensatory damages. *Answer:* Refused. The general rule is merely pecuniary compensation for the damages actually sustained, and that is the rule in this case, but if the jury find from the evidence that the conduct of the defendant was a reckless and intentional oppression, undertaken without probable cause, for the purpose of distressing the plaintiff, then the jury may in their discretion award punitive damages. [3]

9. That under all the evidence in the case, the verdict must be for the defendant. *Answer:* Refused. [4]

Verdict and judgment for plaintiff for $2,525. Defendant appealed.

*Errors assigned* were (1–3) above instructions, quoting them.

*J. S. Ferguson,* with him *E. G. Ferguson,* for appellant.— The burden was on plaintiff to show malice and want of probable cause: Sutton v. Anderson, 103 Pa. 151; Wheeler v. Nesbitt, 24 Howard (U. S.), 544. It was error not to instruct the jury that there was no probable cause: Laughlin v. Clawson, 27 Pa. 328. The jury should have been instructed that the

advice of counsel having been given in an honest statement by defendant, it was sufficient to rebut the presumption of malice: McCarthy v. DeArmit, 99 Pa. 68; Emerson v. Cochran, 111 Pa. 329. Probable cause is reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing that the accused was guilty: Smith v. Ege, 52 Pa. 419; Smith v. Times Pub. Co., 178 Pa. 481.

*C. A. O'Brien* and *Charles W. Ashley*, were not heard, but cited in their printed brief: Leahey v. March, 155 Pa. 458; Smith v. Walter, 125 Pa. 453.

PER CURIAM, January 3, 1898:

This action of trespass for malicious prosecution was twice tried by jury and each trial resulted in a verdict for substantially the same sum in favor of the plaintiff. The case depended on questions of fact which were clearly for the consideration of the jury, and it was accordingly submitted to them by the learned trial judge in a fair and impartial charge in which six of the defendant's nine points—including his request for instructions as to " advice of counsel," etc.,—were affirmed. The remaining three points were rightly refused. In one of them the court was in effect requested to instruct the jury as to the weight of the evidence. This, as the learned judge very properly said, was a question for the jury.

In view of the evidence properly before the jury, they could not have been directed to find for the defendant; nor should the amount recoverable as damages have been limited by the court to mere compensation. The evidence was quite sufficient to justify submission of the questions of probable cause, malice and damages, compensatory or punitive ; and, as to the manner in which these questions were submitted, the defendant has no just reason to complain.

In view of the fact that two successive juries have agreed upon substantially the same verdict, which appears to have been acquiesced in by the trial court, it is unreasonable as well as useless to urge upon us a revision of the verdict.

There is nothing in either of the specifications of error that requires further notice.

Judgment affirmed.