## Moulton v. O'Bryan.

*Contract—Principal and agent—Sale.*

Where a dealer in Pittsburg orders his agent in California to buy a carload of " fancy seedling" oranges and it appears that the words " fancy seedling" have one meaning in Pittsburg, and another meaning in California, and it also appears that at the time the agent executed the order no fancy seedling oranges could be had within the Pittsburg meaning of the term, although such oranges could be had in California within the meaning of the term there, and this latter fact is known to the agent in California, the knowledge of the agent must be imputed to the principal, and the latter cannot repudiate the contract on the ground that he did not get what he ordered.

*Contract—Principal and agent—Evidence—Letters between principal and agent.*

In an action on a contract made by an agent, correspondence between the principal and agent not communicated to the other party, is not admissible in evidence.

. Argued May 10, 1901. Appeal, No. 17, April T., 1900, by plaintiff, from judgment of C. P. No. 2, Allegheny Co., July T., 1897, No. 733, on verdict for defendant in case of E. S. Moulton and H. R. Greene, Jr., copartners, trading as Moulton & Greene, v. J. D. O'Bryan, Jr. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Assumpsit for breach of contract. Before FRAZER, J.

At the trial it appeared that the suit was brought to recover the difference between the price of a carload of seedling oranges which the plaintiff sold through a commission house, and the price which the defendant had previously agreed to pay. The circumstances under which the contract was made are stated in the opinion of the Superior Court.

The court under objection and exception admitted in evidence a number of letters between the defendant and his agent, Edwards. [6–11]

The court charged in part as follows:

This action is brought to recover the balance due upon 336 boxes of oranges shipped by the plaintiffs to the defendant at Pittsburg, in the latter part of 1896. From the testimony, it appears that about December, 1, 1896, the defendant and the plaintiffs had correspondence in regard to the purchase of some oranges. That about December 24 the defendant ordered, through a broker at Riverside, Cal., the carload of oranges in dispute in this case. The question is as to whether or not the oranges shipped were the kind ordered by the defendant. The defendant's claim is that he ordered what are known to the commercial world as fancy seedling oranges, and that he did not receive the quality of oranges ordered by him. There are two kinds of contracts for the sale of personal property known to the law: first, those known as executed contracts, and those which are known as executory contracts. An executed contract is where a man purchases an article from another, and sees and inspects it at the time it is delivered; and, after inspecting it, pays for it and takes it away. That is a delivery, and a completion of the contract. It is known as an executed contract, and if the purchaser is mistaken in the article, and it is not what he supposed it to be, and he loses money on it, it is

his own loss and the seller is not required to make the loss good to him. The rule of what is known in the law as caveat emptor applies. That is, that the buyer must beware. He acts with his eyes open—he sees the article and inspects it—and if he makes a mistake, the mistake is his and not that of the other man, and he must bear the loss. [The other contract is known as an executory contract; that is, where the article is bought by sample or description. In that case the buyer relies upon the seller to select and ship the article ordered, and it is the duty of the seller to select and ship the quality of article purchased; and if he fails to do so he must suffer the loss.] [1] In sales of that kind, when the article purchased arrives at destination, the purchaser has a right to examine and inspect it, and if it is not as ordered he has a right to refuse to accept it. But he must immediately notify the seller that he elects not to accept, and thereupon the seller may either accept the article and have it returned to him, or he may have it sold upon the market, and if it is as ordered he may hold the purchaser for the difference in value.

In this case, when the fruit arrived in Pittsburg, the defendant claims that he examined it, inspected it, found that it was not of the quality and kind that he had ordered, and he refused to accept it and so notified the plaintiffs. Now, if the fruit was not what he ordered, he had the right to reject it, and the plaintiffs would have no right to recover from him. It was the duty of the plaintiff to select and ship to the defendant what are known to the trade in the market as fancy California seedling oranges, and if the plaintiffs failed to do so it is their loss and not Mr. O'Bryan's. [Now, that is the question which you, gentlemen, must determine in this case—whether or no the oranges shipped were fancy seedling oranges. Upon that point you have the testimony of several witnesses. The witnesses from California, the plaintiffs and some others, testified that the oranges were known as fancy California seedling oranges, and were of the grade which could only be procured at that time of the year, in the month of December. Now, I take it, that it is not what could be procured at that time of the year, but the question is, did they ship what are known in the commercial world—known to the fruit trade generally throughout the country—as fancy seedling oranges. It is not what is

known in one particular locality as fancy seedling oranges, but what was known generally to the trade throughout the country. They were obliged to ship him that quality of fruit;] [2] and it was their duty upon receiving the order to select and ship to him that quality of fruit. [Some of the witnesses have said here that it was impossible to obtain a fancy seedling orange at that season of the year; that seedling oranges were not then of the color, quality and sweetness that they would be later; and that the oranges shipped to him were the best that could be obtained in the market at that time. Now, unless the defendant knew that a fancy seedling orange, palatable and sweet, could not be obtained at that time, I take it that he was entitled to have what was known in the market generally as a fancy seedling orange; and if they could not furnish that kind, then it was their duty to so notify him, or not to ship at all. If, however, they shipped oranges that were not up to that grade, then they must bear the loss.] [3]

[Now, you gentlemen must determine from all the evidence whether or not it was understood between these parties that a high-colored, sound and sweet orange was meant by a fancy seedling orange. If it was, then Mr. O'Bryan was entitled to such an orange; but if he knew at the time that a high grade, high-colored, sound and sweet seedling orange could not be obtained at that time, and he ordered that quality of oranges knowing that they could not be obtained, and they sent the best that could be had—the best grade of orange that was on the market in California at that time, and known as a fancy seedling orange —then I take it that the defendant would be responsible, and that he was bound to accept them. But if he relied upon the assertions of the agent that he had at that time what was known in the market generally as a fancy seedling, and he ordered expecting to receive that, and not knowing that they were sour or immature, he had a right to expect to receive those, and if he did not receive them he had a right to refuse to accept them and notify the plaintiffs of his refusal.] [4]

The claim here is for the difference upon that carload of oranges. There were 336 boxes, I believe, included in the car. Mr. O'Bryan, I believe, agreed to pay $1.25 per box for them. When they came here he refused to accept them. The plaintiffs then sold them through an agent, after notifying Mr. O'Bryan

that they would hold him responsible for the difference. They sold them for $565.35, from which they deducted freight and other expenses amounting to $349.64, leaving a net balance realized upon the sale of $215.86, which, deducted from the $420, the price of 336 boxes of oranges at $1.25 a box, would leave a balance of $204.34, which is the amount sued for in this case. There is no evidence to show that that was not the best price that could be realized for the oranges under the circumstances, so that we will accept that price as being the best that could be realized; and if you find in favor of the plaintiffs they should have a verdict for the sum of $204.34, with interest from January 7, 1897. If not, if you find that the plaintiffs are not entitled to recover, then your verdict should be simply for the defendant.

[The burden of proof in this case, as in all other civil cases, is on the plaintiffs. They must satisfy you by the weight of the evidence, not by the greater number of witnesses, but by the weight of the credible testimony in the case, of all the elements necessary to entitle them to recover. They must satisfy you that they shipped the kind of oranges ordered by the defendant, and in good condition. But there is no question, I believe, as to the condition. The testimony is to the effect that the oranges came here well packed and in good condition. The only question is, were they what were known to the market generally as fancy seedling oranges? If they were, then the plaintiffs should have your verdict for the sum of $204.34, with interest from January 7, 1897. If not, your verdict should be for the defendant.] [5]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1–5) above instructions, quoting them. (6–11) Rulings on evidence, quoting the bill of exceptions.

*R. T. M. McCready*, with him *Elmer W. Moore*, for appellants. —The doctrine of the common law was that with regard to quality, the vendor is not bound except by express warranty or fraud. In Pennsylvania this doctrine has never been extended beyond the case of Borrekins v. Bevan, 3 Rawle, 23.

In refusing to call degree of quality an essential character, the Supreme Court has gone much farther than this court is

asked to go in the case now under discussion: Fraley v. Bispham, 10 Pa. 320; Wetherill v. Neilson, 20 Pa. 448.

The letters of the agent were inadmissible: Ryan v. Ulmer, 108 Pa. 332; Williams v. Sawyers, 155 Pa. 129; Dempsey v. Dobson, 174 Pa. 122.

*W. H. McClung,* for appellee.—If the subject of the sale be merchandise not then open to the examination of the purchaser but to be afterwards furnished by the vendor, the sale is subject to the right of inspection by the purchaser, and to the right in him to refuse to accept, if the merchandise be not of the grade and quality which the vendor undertook to furnish: Fogel v. Brubaker, 122 Pa. 7; Holloway v. Jacoby, 120 Pa. 583; Groetzinger v. Kann, 165 Pa. 578.

The right of inspection and refusal was properly exercised in this case at Pittsburg: Fogel v. Brubaker, 122 Pa. 7; Holt v. Pie, 120 Pa. 425.

OPINION BY BEAVER, J., July 25, 1901:

It seems to have been assumed throughout the entire charge of the court below that the defendant ordered directly from the plaintiff a carload of "fancy seedling" oranges. Had this been the fact, the instructions in regard to the difference between an executed and an executory contract for the sale of goods would have been perfectly correct. On the contrary, however, the defendant ordered through J. F. Edwards, Los Angeles, California, a carload of "fancy seedling" oranges. He had no knowledge as to the person from whom they were purchased, nor had the vendors, so far as appears by the evidence, any knowledge of him, except what they acquired through Edwards. Edwards was the defendant's agent. As to this all the testimony agrees. He says: " I purchased a car of oranges from the plaintiffs for the defendant, on telegraphic instructions from the defendant for me to do so. I was at the time acting as broker for the defendant." The defendant testifies: " Q. In the telegram that you sent Edwards, ordering this car of oranges at $1.25 a box, did you made any specifications as to the quality? A. 'Fancy seedlings,' yes, sir. Q. That was the only requirement that you expressed in your telegram, was it? A. Yes, sir. Q. And at that time all you knew about what a 'fancy seedling' was

at that time of the year was what had been told you by the broker, Edwards; is that correct? A. Yes, sir." The plaintiff testifies: "We sold the oranges to the defendant through a broker, named J. F. Edwards, as the broker advised us that he had received a telegram from Mr. O'Bryan to purchase the carload for him. I do not know whether the broker was authorized to accept the oranges here or not. We shipped the oranges to the defendant, O'Bryan, subject to inspection upon arrival, but not subject to acceptance, as the oranges were bought by broker Edwards for O'Bryan." It is perfectly clear, therefore, and is not, in fact, denied that Edwards was the agent of the defendant. He inspected the fruit which was then being shipped by the plaintiff as "fancy seedlings." He understood, as appears from his testimony, what this particular brand of oranges was, and his knowledge upon that subject, so far as the plaintiffs were concerned, was the knowledge of the defendant. The oranges were not of a high color and were sour, and for this reason were rejected by the defendant, when they reached their destination. Defendant, having refused to answer the plaintiffs' telegrams, and learning from Edwards that he demanded a reduction of twenty-five cents per box, and would not receive them without such a reduction, the plaintiffs directed the oranges to be sold by a commission house on account of the defendant, and claimed the difference between the price agreed to be paid and that realized at the sale.

It would appear from the evidence that the term "fancy seedling" has one meaning in California and a different meaning in Pittsburg. In California the term means the best quality of seedling oranges at any time during the season. In Pittsburg it would seem to mean a sound, smooth, high colored sweet orange, but it is admitted by other experienced dealers that it is impossible to secure a "fancy seedling" in December, for the reason that oranges of that class can be secured only when the season is farther advanced and the fruit has attained greater maturity than it ever reaches in December. This the defendant was bound to know, whether he be bound by the knowledge of Edwards in regard to the character of the fruit shipped or not. It was, therefore, error in the court to say: "Now, unless the defendant knew that a fancy seedling orange, palatable and sweet, could not be obtained at that time, I take it that he was

entitled to have what was known in the market generally as a "fancy seedling" orange, and, if they could not furnish that kind, then it was their duty to so notify him. or not ship at all. If, however, they shipped oranges that were not up to that grade, then they must bear the loss." It is evident from the testimony of Edwards, the defendant's agent, that he well understood that a "fancy seedling" in December, "would be bright, clean but not sweet nor as well colored as the fancy seedling oranges would be later." Knowing this, the agent purchased for the defendant the carload of oranges which was shipped to him. In this view of the case, the portions of the charge embraced in the second and fourth specifications of error were not strictly correct, and these assignments of error are sustained.

' The sixth, seventh, eighth, ninth, tenth and eleventh specifications relate to the correspondence between the defendant and his agent, Edwards. There is no allegation that any part of this correspondence was ever submitted to the plaintiffs or that they had any knowlege of the contents thereof, except the information, after the fruit had been received by the defendant at Pittsburg, that he was dissatisfied with it and demanded a reduction of twenty-five cents per box. This testimony was clearly incompetent, and the offers embodying it should have been rejected,—that portion of it leading up to the sale, because it consisted of communications from the defendant to his own agent not communicated to the plaintiffs, and that which was subsequent to the receipt of the consignment in Pittsburg for the same reason and for the additional one that it would be nothing more than the declarations of the defendant in his own favor after the transaction was complete. These specifications of error are, therefore, also sustained.

Judgment reversed and a new venire awarded.

W. W. PORTER, J., concurs in the judgment.