**BIGGANS v. HAJOCA CORP.**
**DASH v. HAJOCA CORP.**
Civ. Nos. 8676, 8675.

United States District Court
E. D. Pennsylvania.
Jan. 19, 1950.

Thomas D. McBride, Philadelphia, Pa., for plaintiffs.

Harry R. Axelroth, of Axelroth & Porteous, Philadelphia, Pa., for defendant.

596

GANEY, District Judge.

The plaintiffs, Abe Dash and Paul Biggans, brought separate actions[1] to recover damages suffered by them as the result of criminal proceedings instituted and prosecuted against them by the defendant. In the criminal proceedings, terminated by acquittal, the plaintiffs were separately charged with larceny, receiving stolen goods, and conspiracy. Since the basic facts and legal questions involved in each are the same, the actions were consolidated for trial. After hearing testimony for eight days, the jury returned a verdict for each plaintiff in the sum of $15,000. Defendant has filed motions, now before us, to set aside the verdicts and enter judgments in its favor, or in the alternative for new trials.

For some time prior to October 1947, certain of defendant's officers and employees had noticed a severe loss in inventory of plumbing and heating supplies supposed to be on hand at defendant's warehouse at North Ninth Street in Philadelphia, Pennsylvania. At defendant's request, a surveillance was maintained by two of defendant's employees and agents of a national detective agency. In the course of this surveillance, it was discovered that several of the order pickers were delivering various supplies to the plaintiffs, who purchased on credit, without at the same time making the required registry or sales record to show that the goods in question were intended to be charged to or paid for by them. Plaintiffs, who were plumbing contractors, had been doing business regularly with the defendant for several years immediately prior to November 28, 1947; they had accounts and unlimited credit with that concern.

In October or the early part of November 1947, the vice-president of defendant communicated with defendant's general counsel who suggested retaining an attorney familiar with criminal law and experienced in trial work. On November 10, 1947, upon the retained attorney's advice, the defendant caused the arrest of two employees responsible for permitting material to be placed in plaintiffs' trucks. Upon being arrested, one of the employees admitted in a signed statement that he had transferred supplies over a period of months to the plaintiffs and that he had received gratuities from them for such services. The other employee signed a statement implicating the first. After he had read these statements and the written reports of the two employees and the agents of the private detective agency, and had received the advice of retained counsel, the vice-president of defendant, without questioning the plaintiffs beforehand, caused plaintiffs to be arrested on November 28, 1947, and subsequently prosecuted in the Quarter Sessions Court of Philadelphia County.

It was admitted by defendant's vice-president in plaintiffs' side of the case that there was in existence during the time the alleged losses of materials occurred a "crime policy" insuring the defendant, among other things, against losses for dishonesty of its employees and inside robbery, and that on or about November 7, 1947, prior to the time plaintiffs were arrested, defendant had filed with the insurance company a large claim for such losses.[2] The record is replete with loose business methods in effect at the defendant's plant, which permitted customers, among other things, to write up their own registers and wander throughout the warehouse without being in anywise closely watched, even though at the period in question, plumbing supplies were extremely difficult to procure.

In support of its motions for judgments, defendant contends that this court should have ruled as a matter of law, in-

1. Diversity of citizenship and the requisite amount in controversy is the basis for the Federal District Court's jurisdiction. 28 U.S.C.A. § 1332. Hence state law, and more particularly, since all the operative facts occurred in this state, Pennsylvania law, is to be applied in these actions. 28 U.S.C.A. § 1652; Erie Railroad v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

2. The amount of the claim was $134,441.30. However, the jury, at the request of plaintiffs' counsel, were instructed to disregard this amount. Transcript of Record, p. 300.

stead of leaving it to the jury to determine, that there was probable cause for bringing and maintaining the criminal proceedings. In the leading case of Curley v. Automobile Finance Co., 1941, 343 Pa. 280, 290, 23 A.2d 48, 53, 139 A.L.R. 1082, the Supreme Court of Pennsylvania said: "In the trial of cases the 'general rule' is that the jury is the trier of questions of fact. In cases of *malicious prosecution* this rule (unless the circumstances hereinafter noted are present), does not prevail, for in such cases the trial judge and *not* the jury determines whether or not the prosecutor in the criminal case * * * had an honest and reasonable belief in the existence of a probable cause for the prosecution's initiation. However, where there is evidence from which the jury in the action for malicious prosecution may legitimately infer that the prosecutor's hope of private gain had a part in the initiation of the criminal proceedings which gave rise to the action, the 'general rule' prevails and the *jury* decides the pivotal question of fact". Also see Angeloni v. Lederer et al., 1926, 89 Pa. Super. 383. Thus the question presented is whether there is any evidence in the case from which the jury may legitimately infer that the defendant's hope of gain had a part in the initiation of the criminal proceedings. It is admitted that a crime policy was in existence during the time of the alleged losses and that defendant had filed a substantial claim thereunder prior to the arrest of the plaintiffs. From the evidence presented at the trial, it would seem that the defendant could recover only under paragraphs A and E, concerning coverage of the policy[3]. Under paragraph A, the insurance company's limit of liability was $100,000, while under paragraph E, an amount greater than $5,500 could not be recovered by the defendant. Thus if the defendant were to recover an amount in excess of $5,500, it would be, as defendant's vice-president believed, by virtue of paragraph A. It probably would not be necessary for defendant to show, in order to recover under paragraph A, that the inventory loss was the result of a dishonest act of one of its employees in collusion with the plaintiffs. Nevertheless, under the conspiracy counts of the indictments in the criminal proceedings, each plaintiff was made a co-defendant with one of the present defendant's employees. If the defendant could have shown that there was collusion, its claim against the insurance company would not be weakened thereby. Further one of the plaintiffs testified that he was told by the vice-president of defendant that since there had been previous losses at defendant's warehouses in Philadelphia and Chester, Pennsylvania, and no criminal proceedings had been brought against the suspected persons, the insurance company had requested defendant to prosecute those suspected of causing the present losses so as to make an example of them. On a motion to set aside the verdict and to enter judgment in defendant's favor, we must assume not only that such a statement was made but also its truth, and that all reasonable inferences to be drawn from the evidence must be viewed in the light most favorable to plaintiffs. Van Sant v. American Express Co., 3 Cir., 1946, 169 F.2d 355, 365. Therefore we must assume the jury found that the defendant did not honestly and reasonably believe that the plaintiffs committed

---

3. The policy provided, in part, that the insurance company would insure the defendant against loss subject to the following terms:

"I Insuring Agreement

"Coverage A. Dishonesty of Employees.

"To pay for loss of property due to dishonest or fraudulent act committed by any of the insured's employees, whether acting alone or in collusion with others.

"Coverage B. Inside Robbery.

"To pay for (a) loss due to robbery committed within the premises. * * *

"II Definitions

"Robbery. A wrongful taking (1) from the person, possession, care of a custodian who, while having such possession, care or custody, has been killed or rendered unconscious, (2) by force and violence inflicted upon such custodian or by putting him in fear of such force and violence, or (3) if not committed by an officer or employee of the insured, by any overt act, of which such custodian is cognizant."

the crimes for which they were prosecuted. As basis for this finding is the fact that the defendant prosecuted the plaintiffs in order to satisfy and comply with the wishes of the company to which it looked to recoup its losses and this for the sole purpose or object of recovering its losses under paragraph A of the policy. In reaching this conclusion, it seems to us, we are applying the rule announced in the Curley case, supra, to a factual situation a step removed from those to which Pennsylvania Courts have applied it. We feel, however, that the latter courts would do likewise under similar circumstances. See Van Sant v. American Express Co., supra, 169 F.2d at pages 368-370.

To avoid the application of the rule in the Curley case, defendant maintains that the admitting of the "Crime policy" into evidence was error because the policy does not cover any losses sustained by defendant as the result of any conduct or acts of the plaintiffs, and therefore, the argument runs, it could not derive any pecuniary gain by instituting criminal proceedings against either plaintiff. A legal interpretation of the crime policy or the determination of what conditions must exist before the defendant may recover thereunder are not necessary in this case. Since the defendant believed, as indicated by its filing of the claim, that it could recover under one or more of its terms, the document was offered into evidence by plaintiffs for the purpose of showing what its actual terms were. This was done so that the jury would not draw any unfair inferences from the mere statement, which was obviously admissible, that such a policy existed. We can agree that a submission of the entire policy, without some explanation, to a jury might confuse them. But under the motions for judgments, we cannot make such an assumption with respect to the present jury. Moreover the attempt by plaintiffs' counsel to point out what he thought were the pertinent and relevant paragraphs of the policy to the jury was cut short by the objection of defendant's counsel on the ground that the document spoke for itself.

■ With respect to another essential element of an action for malicious prose-

cution the defendant claims that each plaintiff has failed to sustain his burden of proving malice. The rule is well established that the existence of malice is a question for the jury to decide; and that malice may be inferred from want of probable cause. Schofield v. Ferrers, 1864, 47 Pa. 194; Curley v. Automobile Finance Co., supra. Where the plaintiffs' evidence, as in the instant case, justifies a finding by the jury that private gain had a part in the initiation of the criminal proceeding, a prima facie case of malice is made out, casting upon the defendant the burden of going forward with the evidence to rebut such an inference. Van Sant v. American Express Co., supra, 169 F.2d at page 367. Thus it is clear that each plaintiff has met his burden with respect to the proof of malice.

■ In the alternative, the defendant insists that its reliance upon the advice of competent counsel rebutted the inference of malice. The Pennsylvania appellate court cases hold that the bringing of criminal proceedings upon the advice of counsel rebuts the inference of malice arising from want of probable cause. Altman v. Standard Refrigerator Co., 1934, 315 Pa. 465, 173 A. 411; Stritmatter v. Nese, 1943, 347 Pa. 9, 31 A.2d 510; Hubert v. Alta Life Ins. Co., 1939, 136 Pa.Super. 147, 7 A.2d 98. But before the reliance upon advice of counsel may have any legal effect in an action for malicious prosecution, such advice must have been relied upon only after there has been a full and fair disclosure of all the relevant facts within the accuser's knowledge. Bell v. Atlantic City R. R. Co., 1902, 202 Pa. 178, 51 A. 600; Lipowicz v. Jervis, 1904, 209 Pa. 315, 58 A. 619; Muir v. Hankele, 1922, 273 Pa. 231, 116 A. 822; Restatement, Torts (1938) Sec. 666(2). At the trial plaintiffs introduced evidence to show that the manner of conducting business at defendant's warehouse was in a state of confusion. From that evidence, the jury could have found, among other things, that: The sales procedure was not always in accordance with defendant's instructions, the bookkeeping and inventory methods were lax, the employees were careless and indifferent in the execution of their duties, and these conditions were known to those in

charge of the warehouse. A rule of principal and agent is that where knowledge is acquired by an agent in the course of his agency and it relates to matters concerning the business which the agent is authorized to conduct on behalf of the principal, such knowledge is imputable to the principal.[4] Although it was shown at the trial of the instant actions that defendant's vice-president did not have actual knowledge of the conditions at the warehouse, the above rule of agency may be applied, see Farneth v. Commercial Credit Co., 1933, 313 Pa. 433, 439, 169 A. 89, Simpson v. Montgomery Ward & Co., 1949, 165 Pa.Super. 408, 414, 68 A.2d 442, and knowledge of them is imputable to him and hence to the defendant. Defendant's evidence does not show that the true state of affairs at the warehouse during the period the alleged inventory losses occurred was disclosed to the attorney who advised prosecution; he was not told of the value and extent of plaintiffs' business with the defendant, nor did he know the terms and conditions of the crime policy or that the claim for substantial losses had been filed. From this omission the jury could have concluded that the advice of counsel was relied upon by the defendant without it having disclosed the true setting in which the alleged thefts took place.

■ Even if we assume that full disclosure had been made, the jury could still find malice. The case of Aland v. Pyle, 1919, 263 Pa. 254, states at pages 257, 258, 106 A. 349 at page 350: "The fact that a prosecution is instituted upon advice of counsel after a fair statement of the facts is not conclusive evidence of the absence of malice. 'It is not the advice, however, that rebuts the presumption of malice, but the innocence of the defendant's conduct, of which his seeking advice is merely evidence; and whether the advice is a good defense depends upon the good faith with which it is sought and followed, and this is a question for the jury to determine from the evidence.' Smith v. Walter, 125 Pa. 453, 17 A. 466." Taking into consideration the presence of the element of private gain, the jury could have determined that the advice of counsel was not sought in good faith by the defendant. Hubert v. Alta Life Ins. Co., supra, 136 Pa.Super. at pages 151–153, 7 A.2d 98.

On the subject of damages, the defendant has a number of objections. The first is that with the exception of $1,250 paid by each plaintiff as attorney's fees, there was a total absence of proof of actual damages suffered by plaintiffs. Second, the jury should not have been permitted to award punitive damages. The court failed to charge the jury that punitive damages must bear a reasonable relationship to the proven damages. And finally, the verdicts were excessive.

■ There are a number of circumstances and conditions for the existence of which the jury may award compensatory damages to a plaintiff in an action for malicious prosecution.[5] Some of these, a number of which overlap, may be listed as follows: Loss of liberty, loss of time, physical suffering or discomfort, mental suffering from humiliation and injury to feelings, injury to reputation and station in the community in which he resides, or does business, the risk of conviction, and the reasonable and necessary expenses in securing his release from arrest and defending the criminal prosecution. Once a plaintiff has established the essential elements of his cause of action, he is entitled to recover, without further proof, damages which normally result from being subjected to a criminal prosecution such as that to which the plaintiffs were required to endure. These are designated as general damages and include injury to reputation, humiliation and the distress resulting from being

4. In re Heckman's Estate, 1896, 172 Pa. 185, 33 A. 552; Evans v. Metropolitan Life Ins. Co., 1929, 294 Pa. 406, 144 A. 294; Moulton v. O'Bryan, 1901, 17 Pa. Super. 593; Spern v. Globe & Republic Ins. Co., 1938, 131 Pa.Super. 595, 200 A. 196.

5. Abrahams v. Cooper, 1876, 81 Pa. 232; Miller v. Hammer, 1891, 141 Pa. 196, 21 A. 767; Mihalyik v. Klein, 1903, 22 Pa. Super. 193; McCormick, Damages (1935) Sec. 108(2); Harper, Torts (1933) Sec. 271.

subjected to the risk of conviction.[6] On the other hand, if the plaintiff is to recover damages for additional loss or injury, such loss or injury must be established by proof and shown to be the natural and proximate result of the criminal proceedings.[7] At the trial the plaintiffs showed that they were arrested, held in custody for several hours immediately prior to and after the preliminary hearing, required to post bail in the amount of $1,500, and that they were subjected to a three-day criminal trial on charges amounting to felonies. Thus with the exception of physical harm and loss of business, it can not be said that the plaintiffs have failed to offer evidence from which the jury could allow compensatory damages in addition to the amount of the attorney's fees.

Besides compensatory damages, the jury may, under certain circumstances, award punitive damages in actions of this nature. This type of damage, sometimes referred to as exemplary or vindictive, may be meted out by the jury where they believe, and the evidence is sufficient to support that belief, that the conduct of the defendant in instituting and prosecuting the criminal proceedings was so malicious and intentionally oppressive, so wanton and careless, or so reckless as to indicate a disregard of the rights of the accused[8]. "Such conduct must appear affirmatively in the evidence. It cannot be presumed". Thompson v. Swank, 1934, 317 Pa. 158, 176 A. 211. In our opinion there was sufficient evidence which would substantiate the jury's belief that defendant's conduct was so wanton and careless as to indicate an utter disregard on the part of the defendant of the rights of the plaintiffs. Reduced to its simplest terms, the evidence which defendant took into consideration in causing the arrest of plaintiffs was the observation by its employees that a few items of supplies were transferred to the plaintiffs and that formal records covering the items and bearing the dates on which such items were transferred could not be found within the confines of the warehouse. When both the loose manner in which business was conducted at the warehouse and the value of the items for which each plaintiff was accused of stealing or receiving as stolen goods did not exceed $216 are kept in mind, the defendant's causing the arrest of two highly reputable plumbing contractors, whose day to day and week to week purchases at defendant's warehouse over a yearly period exceeded $11,000 and $18,000 respectively, without it endeavoring to obtain some explanation either from the plaintiffs or its suspected employees, merited the sting of punitive damages.

When fixing the amount of the punitive damages the jury may, in addition to the degree of malignity shown, take into account the financial worth of the defendant so that they may determine what amount will be sufficient to punish the defendant. Aland v. Pyle, supra, 263 Pa. at page 256, 106 A. 349; Arye v. Dickstein et al., 1940, 337 Pa. 471, 12 A.2d 19. "There is no general rule on the subject of exemplary or punitive damages. The amount must not be excessive, nor indicate bias or feeling; it must not be grossly disproportionate to the real damage inflicted".[9] Thompson v. Swank, supra, 317 Pa. at page 160, 176 A. at page 211. The jury, as has

6. McCormick, Damages (1935), pp. 382, 383; Restatement, Torts (1938) Sec. 670 and following comment.

7. Restatement, Torts (1938) Sec. 671 and comment thereto; McCormick on Damages (1935), p. 383. For a discussion of the distinction between "general" and "special" damages, see the last mentioned works, Sec. 8.

8. Baldwin v. Von der Ahe, 1898, 184 Pa. 116, 39 A. 7; Aland v. Pyle, 1919, 263 Pa. 254, 256, 106 A. 349; Thompson v. Swank, 1934, 317 Pa. 158, 176 A. 211;

Arye v. Dickstein, 1940, 337 Pa. 471, 12 A.2d 19; Matsinger v. Arzoomania, 1925, 86 Pa.Super. 430.

9. The apparent inconsistency of this statement with the one made in Givens v. W. J. Gilmore Drug Co., 1940, 337 Pa. 278, 284, 10 A.2d 12, 16, to the effect that " * * * it is well established that punitive damages must bear a reasonable relation to the actual damages suffered", disappears when it is considered that the latter case was brought for excessive distress, an action for a "simple" tort.

been adverted to earlier, returned a verdict in the amount of $15,000 in each action; each verdict was a lump-sum award. Nowhere in its requests for charge did the defendant ask for special findings by the jury with respect to damages. Although it took an exception to that part of the court's charge concerning punitive damages, the defendant did not ask the court to instruct the jury that such damages "must not be grossly disproportionate to the real damage inflicted", or give any other ground for its exception. Rule 51 of the Federal Rules of Civil Procedure, 28 U.S.C.A., in part, provides: "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection". The purpose of this rule is to give the trial judge an opportunity to correct any alleged error brought to his attention. Waters v. Kings County Trust Co., 2 Cir., 1944, 144 F.2d 680, 682, certiorari denied 323 U.S. 769, 65 S.Ct. 121, 89 L.Ed. 615. Partial compliance with the rule does not effectively serve that purpose. Palmer v. Hoffman, 1943, 318 U. S. 109, 119-120, 63 S.Ct. 477, 87 L.Ed. 645, 144 A.L.R. 719; Tucker v. Loew's Theatre & Realty Corp., 2 Cir., 1945, 149 F.2d 677, 680. At the time it was made, this court did not know the precise reason for defendant's exception, which at best was ambiguous. One of the reasons for the exception could be that the jury should not be permitted to award punitive damages. Consequently, as we have indicated above, a proper basis existed for overruling defendant's exception. Nor can we say, as did the court in Alcaro v. Jean Jordeau, Inc., 3 Cir., 1943, 138 F.2d 767, 771, that the defendant had reason to believe that the trial judge fully comprehended the grounds for its exception; all we can say is, it is reasonable to assume that the jury did award punitive damages. Because we do not know what portion of the verdict the jury attributed to compensatory damages, we are unable to determine whether the punitive damages are reasonably, let alone grossly, disproportional to the compensatory damages.

In answer to the objection that the verdicts were excessive, we can only point to what was said in Thompson v. Swank, supra. The test is not what sum this court would have awarded were it the trier of the facts, but did the amount fixed by the jury exceed the limits, albeit not clearly defined, set by the law of Pennsylvania. Bearing in mind, along with all the other factors in the case, that the defendant's net worth is in excess of six million dollars, we think that the verdict is within the bounds set by law and that it should stand undiminished by this court.

Most of the contentions advanced by the defendant to buttress its motion for new trials have been answered under the motions for judgment n. o. v. Many of the remaining ones, asserted to be prejudicial to its cause, could have been obviated by timely and properly grounded objections by the defendant. The total effect of these and other alleged errors is not such as would cause us to exercise our discretion in awarding new trials.

Accordingly, defendant's motion in each action to set aside the verdict and to enter judgment in its favor, or in the alternative for a new trial is denied.